Stephen W. Rupp, #2824
Brian J. Porter, #14291
**McKay, Burton, & Thurman, P.C.**
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 521-4135
E-mail: bporter@mbt-law.com
*Attorneys for Plaintiff Stephen W. Rupp*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>VANESSA KATHLEEN VELASQUEZ<br><br>Debtor. | Bankruptcy No. 20-23802 RKM<br>(Chapter 7) |
| STEPHEN W. RUPP, as Trustee of the Chapter 7 Bankruptcy Estate of Vanessa Kathleen Velasquez<br><br>Plaintiff,<br><br>vs.<br><br>LUCKY'S AUTO CREDIT, LLC<br><br>Defendant. | Adversary Proceeding No. 21-_____<br><br>Judge R. Kimball Mosier<br><br>**FILED ELECTRONICALLY** |

**C O M P L A I N T**
_____

Plaintiff Stephen W. Rupp, as trustee of the Chapter 7 bankruptcy estate of Vanessa Kathleen Velasquez, hereby complains against Defendant Lucky's Auto Credit, LLC as follows:

1

## PARTIES

1. Plaintiff Stephen W. Rupp ("Plaintiff") is the duly appointed, qualified, and acting trustee of Debtor Vanessa Kathleen Velasquez ("Debtor") Chapter 7 bankruptcy estate in bankruptcy case No. 20-23802 (the "Bankruptcy Case"), which is pending in the United States Bankruptcy Court for the District of Utah—Central Division (the "Bankruptcy Court"), and pursuant to 11 U.S.C. § 323 is the representative of Debtor's bankruptcy estate in the Bankruptcy Case and has the capacity to sue.

2. Defendant Lucky's Auto Credit, LLC ("Lucky's" or "Defendant") is, upon information and belief, a Utah limited-liability corporation with its principal place of business in the state of Utah.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and by General Order of Reference (DUCivR 83-7.1) from the United States District Court for the District of Utah.

4. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2) and arises under Title 11 of the United States Code and relates to Debtor's Chapter 7 bankruptcy case.

5. Venue for this adversary proceeding is proper in accordance with 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

6. During May 2020, Debtor agreed to transfer $11,799.00 to Defendant in order to purchase a 2011 Hyundai Sonata (the "Vehicle") from Defendant (the "Transfer"). A copy of the purchase contract ("Purchase Agreement") is attached hereto as Exhibit "A".

7. Debtor listed the Vehicle on his bankruptcy statements and schedules as having a value of $4,000.00 [Bankruptcy Case, Docket No. 11, pg. 1].

8.Plaintiff has conducted independent research and verified that $4,000.00 is an accurate value of the Vehicle.

9.Defendant did not provide Debtor with reasonably equivalent value in exchange for the Transfer.

10.The Transfer occurred within two (2) years of the Petition Date of the Bankruptcy Case.

11.George Gomez ("Mr. Gomez"), is also a purchaser of the Vehicle, and has filed his own chapter 7 bankruptcy petition which is currently pending in the District of Utah [See Bankruptcy Case No. 20-24235].

12.Mr. Gomez also lists the Vehicle on his bankruptcy statements and schedules as having a value of $4,000.00 [See Bankruptcy Case No. 20-24235, ECF Docket No. 12].

**FIRST CAUSE OF ACTION**
*(Fraudulent Transfer –11 U.S.C. §§ 548(a)(1)(B) and 550)*

13.Pursuant to Federal Rule of Civil Procedure 10(c), as made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7010, Plaintiff incorporates by this reference paragraphs one (1) through twelve (12) of this Complaint as if fully set forth herein.

14.Debtor received less than a reasonably equivalent value in exchange for the Transfer because Debtor only received a vehicle worth $4,000.00 in exchange for the Transfer of $11,799.00 to Defendant.

15.Debtor was insolvent at the time of the Transfer because his debts exceeded his assets and he was not able to pay the debts as they became due.

16.Based on Debtor's schedules D, E, and F in the Bankruptcy Case, Debtor had unsecured debt owed to creditors at the time of the Transfer and Debtor did not have the means to pay the unsecured debt.

17. By reason of the foregoing, Plaintiff may avoid the Transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

18. Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover from Defendant the Transfer or the value of the Transfer.

**SECOND CAUSE OF ACTION**
*(11 U.S.C. §§ 544(b) and 550 and Utah Code §§ 25-6-202 and 203)*

19. Pursuant to Federal Rule of Civil Procedure 10(c), as made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7010, Plaintiff incorporates by this reference paragraphs one (1) through eighteen (18) of this Complaint as if fully set forth herein.

20. Debtor received less than a reasonably equivalent value in exchange for the Transfer because Debtor received a vehicle worth $4,000.00 in exchange for the Transfer of $11,799.00 to Defendant.

21. Debtor was insolvent at the time of the Transfer because his debts exceeded his assets and he was not able to pay his debts as they became due.

22. Based on Debtor's schedules D, E, and F in the Bankruptcy Case, Debtor had unsecured debt owed to creditors at the time of the Transfer and Debtor did not have the means to pay the unsecured debt.

23. By reason of the foregoing, the Transfer is fraudulent as to Plaintiff pursuant to Utah Code §§ 25-6-202 and 203, as made applicable to this proceeding by 11 U.S.C. § 544(b).

24. By reason of the foregoing and pursuant to Utah Code §§ 25-6-202 and 203, Plaintiff is entitled to:

    a. A judgment avoiding the Transfer.

    b. Recovery from Defendant the Transfer or the value of the Transfer pursuant to 11 U.S.C. § 550.

4

  c. An attachment or other provisional remedy against the assets transferred or other property of Defendant.

  d. Any other relief the circumstances may require.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiff requests relief and remedy against Defendant as follows:

  A. On the first cause of action, an appropriate judgment or order avoiding the Transfer made by Debtor to Defendant and allowing Plaintiff to recover the Transfer or the value of the Transfer from Defendant or awarding Plaintiff a judgment in the amount of no less than $7,799.00 against Defendant, plus such additional amounts to be shown at trial;

  B. On the second cause of action, an appropriate judgment or order avoiding the Transfer made by Debtor to Defendant and allowing Plaintiff to recover the Transfer or the value of the Transfer from Defendant or awarding Plaintiff a judgment in the amount of no less than $7,799.00 against Defendant, plus such additional amounts to be shown at trial, as the value of the Transfer; and

  C. Such other relief and remedy as deemed appropriate by the court.

DATED this 7th day of January, 2021

           **McKay, Burton & Thurman, P.C.**
            /s/ Brian J. Porter
           Brian J. Porter
           *Attorneys for Plaintiff Stephen W. Rupp*

# EXHIBIT A

# PURCHASE AGREEMENT

| | |
|---|---|
| Buyer Name, Address & Phone: | GEORGE GOMEZ, 2908 S TUNDRA LANE #205, WEST VALLEY CITY, UT 84119 (801) 577-4916 |
| Co-Buyer Name, Address & Phone: | VANESSA VELASQUEZ, 2908 S TUNDRA LANE #205, WEST VALLEY CITY, UT 84119 |
| Co-Buyer Name, Address & Phone: | N/A |
| Seller Name, Address & Phone: | LUCKY'S AUTO CREDIT, 3081 S STATE STREET, SALT LAKE CITY, UT 84115 (801) 618-1300 |

These definitions apply to this Agreement: "Dealer" "us" "our" and "we" mean or refer to the Dealer named in this Agreement and who becomes a party to this Agreement by accepting it; "Buyer," "Purchaser" and "you" mean or refer to the party identified as such above; "Vehicle" is the vehicle or chassis that is the subject of this Agreement. "Trade-in" is the used vehicle that Buyer intends to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.

**Vehicle Description:** You hereby purchase from us, under the terms and conditions specified, the following vehicle:

| Stock Number: 11032 | Year: 2011 | Make: HYUNDAI | Model: SONATA | Body: 4 DOOR SEDAN |
|---|---|---|---|---|
| Mileage: 144004 | Tag Number: | New/Used: USED | VIN: 5NPEB4AC0BH180800 | Color: BLACK |
| Optional Accessories | | | In disclosing the mileage and/or odometer reading of this Vehicle to you, we have relied in good faith on written information as to the mileage and/or odometer reading of the Vehicle supplied by the prior owner of the Vehicle and/or a statement of mileage that appears on the title certificate of the Vehicle issued by the state in which the vehicle was last registered. | |

## FINANCING ARRANGEMENT DISCLOSURE

If Purchaser agrees to be responsible for financing, or if this is a cash only or cash-plus-trade-in only transaction, check the box and Purchaser must sign below.

☐ **PURCHASER AGREES TO ARRANGE FINANCING**

THE PURCHASER OF THE MOTOR VEHICLE DESCRIBED IN THIS CONTRACT ACKNOWLEDGES THAT THE SELLER OF THE MOTOR VEHICLE HAS MADE NO PROMISES, WARRANTIES, OR REPRESENTATIONS REGARDING SELLER'S ABILITY TO OBTAIN FINANCING FOR THE PURCHASE OF THE MOTOR VEHICLE. FURTHERMORE, PURCHASER UNDERSTANDS THAT IF FINANCING IS NECESSARY IN ORDER FOR THE PURCHASER TO COMPLETE THE PAYMENT TERMS OF THIS CONTRACT ALL THE FINANCING ARRANGEMENTS ARE THE SOLE RESPONSIBILITY OF THE PURCHASER.

| N/A | N/A | N/A |
|---|---|---|
| Buyer Signs | Co-Buyer Signs | Co-Buyer Signs |

If Seller agrees to arrange for financing, check the box and Purchaser and Seller must sign below.

☒ **SELLER AGREES TO SEEK ARRANGEMENTS FOR FINANCING**

(1) THE PURCHASER OF THE MOTOR VEHICLE DESCRIBED IN THIS CONTRACT HAS EXECUTED THE CONTRACT IN RELIANCE UPON THE SELLER'S REPRESENTATION THAT THE SELLER CAN PROVIDE FINANCING ARRANGEMENTS FOR THE PURCHASE OF THE MOTOR VEHICLE. THE PRIMARY TERMS OF THE FINANCING ARE AS FOLLOWS:
INTEREST RATE BETWEEN 24.95 % AND 24.95 % PER ANNUM, TERM BETWEEN 42 MONTHS AND 42 MONTHS. MONTHLY PAYMENTS BETWEEN $ 448.00 PER MONTH AND $ 672.00 PER MONTH BASED ON A DOWN PAYMENT OF $ 200.00.

(2)(a) IF SELLER IS NOT ABLE TO ARRANGE FINANCING WITHIN THE TERMS DISCLOSED, THEN SELLER MUST WITHIN SEVEN CALENDAR DAYS OF THE DATE OF SALE MAIL NOTICE TO THE PURCHASER THAT HE HAS NOT BEEN ABLE TO ARRANGE FINANCING. (b) PURCHASER THEN HAS 14 DAYS FROM THE DATE OF SALE TO ELECT, IF PURCHASER CHOOSES, TO RESCIND THE CONTRACT OF SALE PURSUANT TO SECTION 41-3-401.
IN ORDER TO RESCIND THE CONTRACT OF SALE, THE PURCHASER SHALL:
  (i) RETURN TO SELLER THE MOTOR VEHICLE HE PURCHASED;
  (ii) PAY THE SELLER AN AMOUNT EQUAL TO THE CURRENT STANDARD MILEAGE RATE FOR THE COST OF OPERATING A MOTOR VEHICLE ESTABLISHED BY THE FEDERAL INTERNAL REVENUE SERVICE FOR EACH MILE THE MOTOR VEHICLE HAS BEEN DRIVEN; AND
  (iii) COMPENSATE SELLER FOR ANY PHYSICAL DAMAGE TO THE MOTOR VEHICLE.
(3) IN RETURN, SELLER SHALL GIVE BACK TO THE PURCHASER ALL PAYMENTS OR OTHER CONSIDERATION PAID BY THE PURCHASER, INCLUDING ANY DOWN PAYMENT AND ANY MOTOR VEHICLE TRADED IN. (4) IF THE TRADE-IN HAS BEEN SOLD OR OTHERWISE DISPOSED OF BEFORE THE PURCHASER RESCINDS THE TRANSACTION, THEN THE SELLER SHALL RETURN TO THE PURCHASER A SUM EQUIVALENT TO THE ALLOWANCE TOWARD THE PURCHASE PRICE GIVEN BY THE SELLER FOR THE TRADE-IN, AS NOTED IN THE DOCUMENT OF SALE.
(5) IF PURCHASER DOES NOT ELECT TO RESCIND THE CONTRACT OF SALE AS PROVIDED IN SUBSECTION (2)(b) OF THIS FORM: (a) THE PURCHASER IS RESPONSIBLE FOR ADHERENCE TO THE TERMS AND CONDITIONS OF THE CONTRACT OR RISKS BEING FOUND IN DEFAULT OF THE TERMS AND CONDITIONS; (b) THE TERMS AND CONDITIONS OF THE DISCLOSURES SET FORTH IN SECTION (1) OF THIS FORM ARE NOT BINDING ON THE SELLER; AND (c) IF FINANCING IS NECESSARY FOR PURCHASER TO COMPLETE THE PAYMENT TERMS OF THE CONTRACT OF SALE, THE PURCHASER IS SOLELY RESPONSIBLE FOR MAKING ALL THE FINANCING ARRANGEMENTS.
(6) SIGNING THIS DISCLOSURE DOES NOT PROHIBIT THE PURCHASER FROM SEEKING HIS OWN FINANCING.

| /s/ [signature] | /s/ [signature] | N/A |
|---|---|---|
| Buyer Signs | Co-Buyer Signs | Co-Buyer Signs |

LUCKY'S AUTO CREDIT           By X /s/ [signature]
Seller Signs

HC# 4847-6233-2936v3 – 7/11
Utah
Page 1 of 3
Customer Initials GG VV
AutoStar Solutions, Inc
PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN ATTORNEY.

## PURCHASE AGREEMENT

| TRADE INFO | | | | TRADE INFO | | |
|---|---|---|---|---|---|---|
| Year: N/A | Make: N/A | | Model: N/A | Year: N/A | Make: N/A | Model: N/A |
| VIN: N/A | | Stock #: N/A | Mileage: N/A | VIN: N/A | Stock #: N/A | Mileage: N/A |

| LIEN PAYOFF INFO | | ITEMIZATION | |
|---|---|---|---|
| Payoff Amount: | N/A | Cash Price of Vehicle | $ 11799.00 |
| Payoff Good Thru: | N/A | Accessories | $ 0.00 |
| Payoff To: | N/A | Service Contract | $ 0.00 |
| Payoff Address: | N/A | Sales Tax | $ 939.00 |
| Payoff City: | N/A | Documentary Fee | $ 805.00 |
| Payoff State: | N/A | State Inspection/Emissions Test | $ 43.00 |
| Payoff Zip: | N/A | Title Fees | $ 6.00 |
| LIEN INFORMATION | | Registration Fees | $ 0.00 |
| Lienholder Name: | TITANIUM FUNDS LLC | License Plate Fees | $ 72.25 |
| Lienholder Address: | 3081 S. STATE STREET | Automobile Driver Education Fees | $ 0.00 |
| Lienholder City: | SALT LAKE CITY | Uninsured Motorist Identification Fees | $ 0.00 |
| Lienholder State: | UT | Age Based/Property Assessment Fees | $ 10.66 |
| Lienholder Zip: | 84115 | Tire Recycling Fee | $ 0.00 |
| Lien Date: | 05/21/2020 | AGE BASED | $ 50.00 |
| By initialing below, you represent and warrant with regard to any trade in: | | COUNTY FEE | $ 13.00 |
| | | N/A | $ 0.00 |
| N/A  1. The true and actual mileage is as stated above. The odometer is working at this time and has not been repaired or replaced. | | **TOTAL CASH PRICE** | $ 13737.91 |
| | | Credit Life & Credit Disability Insurance | $ 0.00 |
| N/A  2. The vehicle(s) has not been designated a total loss or unrepairable by an insurance company and has not been issued a salvage, rebuilt and/or reconditioned title, and has not been exposed to flood damage. | | GAP/Single Interest Insurance | $ 0.00 |
| | | N/A | $ 0.00 |
| | | N/A | $ 0.00 |
| | | N/A | $ 0.00 |
| | | N/A | $ 0.00 |
| | | Trade-In Amount | $ 0.00 |
| | | Trade-In Payoff Amount | $ 0.00 |
| | | Cash Down Payment | $ 200.00 |
| | | Deferred Down Payment | $ 0.00 |
| | | **TOTAL DOWN PAYMENT** | $ 200.00 |
| | | **UNPAID BALANCE** | $ 13537.91 |

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT OURS. ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS WE FURNISHED YOU WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY US ON OUR OWN BEHALF. WE NEITHER ASSUME NOR AUTHORIZE ANY PERSON TO ASSUME FOR US ANY LIABILITY IN CONNECTION WITH THE SALE OF ANY PRODUCTS. UNLESS WE MAKE A WRITTEN WARRANTY ON OUR OWN BEHALF, OR ENTER INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS ORDER, **WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, ON THE VEHICLE, AND THERE WILL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.** THIS PROVISION DOES NOT AFFECT ANY MANUFACTURER OR SUPPLIER WARRANTIES COVERING THE VEHICLE.

☒ If this box is checked, the vehicle you are trading in is subject to an unpaid loan, lease or other obligation. You remain responsible for the unpaid loan, lease or other obligation despite the trade-in of the vehicle. By signing below, you acknowledge that you remain responsible for payment of the unpaid loan, lease or other obligation.

| X          N/A          | X          N/A          | X          N/A          |
|---|---|---|
| Buyer Signs          Date          Co-Buyer Signs | Date          Co-Buyer Signs | Date |

You agree that this Agreement includes all of the terms and conditions on all pages of this Agreement. You certify that you are of legal age or older and acknowledge that you have read its terms and have received a true copy of it. If you are buying the Vehicle for cash (this includes arranging your own financing from a party other than us), this Agreement shall become final and binding when it is signed by our authorized representative. If you are buying the Vehicle in a credit sale transaction with us evidenced by a signed retail installment sales contract, this Agreement becomes binding when you sign it and the retail installment sales contract. You agree to sign such agreements or documents as we may require to effect the terms and conditions of payment shown in this Agreement. You or we may rescind the retail installment sales transaction if we are unable to assign the retail installment sales contract to a financial institution.

| X _[signature]_  05/21/2020 | X _[signature]_  05/21/2020 | X N/A       N/A |
|---|---|---|
| Buyer Signs          Date | Co-Buyer Signs          Date | Co-Buyer Signs          Date |

Dealer or Authorized Representative: LUCKY'S AUTO CREDIT     By X _[signature]_     Date: 05/21/2020

# PURCHASE AGREEMENT

**OTHER TERMS AND CONDITIONS**

1. PURCHASE OF A NEW VEHICLE. If this Agreement is for the sale of a new vehicle, this paragraph applies. "Manufacturer" means the corporation that manufactured the Vehicle. We are not the Manufacturer's agent. You and we are the sole parties to this Agreement. References in this Agreement to Manufacturer are for the purpose of describing certain contractual relationships between the Manufacturer and us relating to new vehicles. The Manufacturer may change the design of any vehicle, chassis, accessories, or parts at any time without notice and without obligation. The Manufacturer may also make the same or any similar change upon any vehicle, chassis, accessories, or parts already bought by or shipped to us or being manufactured or sold in accordance with our orders. If the Manufacturer makes such a change, we have no obligation to you to make the same or any similar change in the Vehicle or its parts either before or after we deliver the Vehicle to you. The Manufacturer may change our price of new vehicles without notice. If that happens with regard to new vehicles of the series and body type of the Vehicle before we deliver it to you, we may change the cash delivered price of the Vehicle to you accordingly. If we do, you may cancel this Agreement. If you cancel, we shall return any Trade-in to you, unless we have sold it. You agree to pay reasonable storage and repair charges. If we have sold the Trade-in, we shall pay you the sales price of the Trade-in, less a sales commission of  N/A  % and any expense in storing, insuring, conditioning or advertising it for sale.

2. TRADE-IN. If you don't deliver your Trade-in to us until we deliver the Vehicle to you, we will reappraise the Trade-in at that time. The reappraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown in this Agreement, you may cancel this Agreement. You must exercise your right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us. You agree to give us satisfactory evidence of title to any Trade-in when you deliver it to us. You warrant any Trade-in to be your property. You warrant that the Trade-in is free and clear of all liens and encumbrances unless otherwise noted in this Agreement. You represent that the Trade-in's mileage shown in this Agreement is the actual mileage on the Trade-in unless you have noted other mileage on this Agreement. You authorize us to rely on this representation in entering into this transaction. Payoff information shown in this Agreement is provided by you and/or your lienholder. Should the actual payoff(s) be less, we will refund the difference to you. If the payoff(s) is more, you agree to remit the difference to us within three business days of notification of the difference. You represent and certify that any Trade-in vehicle does not have and has never had a salvage, flood damaged or reconditioned title. If you provide false information, you will repurchase the related Trade-in from us for the full price allowed to you plus all costs we incur in resolving this matter including but not limited to reconditioning costs, legal fees, court and collection costs.

3. OUR FAILURE TO DELIVER THE VEHICLE. We are not liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to any cause beyond our control or without our fault or negligence. If you fail or refuse to accept delivery of the Vehicle or comply with this Agreement, we may keep as liquidated damages any cash deposit you made, to the extent not prohibited by law. To the extent not prohibited by law, we may reimburse ourselves, from any cash deposit you made, for any expenses and losses we incur or suffer as a result of your failure or refusal. Such expenses and losses may include our reasonable attorneys' fees. This section doesn't apply if you cancel this Agreement under section 2.

4. VEHICLE PRICE; TAXES. The Vehicle price includes reimbursement for Federal Excise taxes. The Vehicle price doesn't include sales taxes, use taxes or occupational taxes based on sales volume, (federal, state or local) unless expressly so stated. You agree to pay, unless prohibited by law, any such taxes imposed on or that apply to the transaction reflected by this Agreement, regardless of who has primary liability for the tax.

5. CREDIT INSURANCE. If this Agreement shows a charge for Credit Insurance, this paragraph applies. The Credit Insurance provisions in any retail installment contract you later sign related to this Agreement will apply. If such insurance is wholly or partly unavailable under the designated policy, we will deduct the applicable part of the Credit Insurance charge shown in this Agreement and the related finance charge from the Total Time Balance. If such insurance does not become effective, we will notify you of that fact. This Agreement and any related retail installment contract you sign shall otherwise remain fully effective, to the extent provided by applicable law.

6. YOUR OBLIGATIONS IF THERE IS AN UNPAID BALANCE. This Agreement is an agreement to buy the Vehicle. If there is an Unpaid Balance, your obligation to buy and our obligation to sell the Vehicle are expressly conditioned upon you obtaining financing for the Unpaid Balance. You have two business days from the date of this Agreement to obtain such financing. If you pay us with a check that is dishonored or unpaid for any reason, we may, at our sole option, declare this Agreement null and void and retake the Vehicle, or make claims against you on the check. In addition, we will charge you a $25 returned check charge.

7. IF THE PURCHASE OR FINANCING IS NOT COMPLETED. If for any reason you and we do not complete the Vehicle sale and purchase, financing is not obtained, or this Agreement is declared void, this section applies. You will return the Vehicle to us. You will pay us on demand all reasonable charges and expenses for any damage to the Vehicle. You will pay us the greater of $.30 per mile or $20 per day for your use of the Vehicle. When you have paid us the amounts you owe under this Agreement, we will return the Trade-in. If you fail to return the Vehicle within 24 hours of notice, you agree that we may, solely at our option, cancel the sale and retake immediate possession of the Vehicle and, in addition to those charges specified above, you agree to pay us all reasonable expenses we incur in connection with retaking the Vehicle, including attorneys' fees and other expenses to the extent permitted by applicable law.

8. INCONSISTENT TERMS. In the event that any of the terms and conditions of this Agreement are inconsistent with the terms and conditions of any retail installment sales contract between you and us, the terms of such retail installment sales contract shall apply.

9. **Used motor vehicle buyers guide: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Guía para compradores de vehículos usados: La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

HC# 4847-6233-2936v3 – 7/11
Utah
Page 3 of 3
Customer Initials
AutoStar Solutions, Inc
PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN ATTORNEY.

## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

Date: 05/21/2020

Buyer Name, Address & Phone: GEORGE GOMEZ
2908 S TUNDRA LANE #205, WEST VALLEY CITY, UT 84119 (801) 577-4916

Co-Buyer Name, Address & Phone: VANESSA VELASQUEZ
2908 S TUNDRA LANE #205, WEST VALLEY CITY, UT 84119 (385) 337-0833

Co-Buyer Name, Address & Phone: N/A

Co-Signer Name, Address & Phone: N/A

Seller Name, Address & Phone: LUCKY'S AUTO CREDIT
3081 S STATE STREET SALT LAKE CITY, UT 84115 (801) 618-1300

The Buyer is referred to as "I" or "me" or "my". The Seller is referred to as "you" or "your." This contract may be transferred by the Seller.

**PROMISE TO PAY:** By signing this contract, I choose to purchase the motor vehicle on credit according to the terms of this contract. The Federal Truth in Lending Disclosures set out below ("TILA Disclosures") are part of this contract. I agree to pay you the Amount Financed, Finance Charges, and any other charges in this contract to you in U.S. funds. I agree to make payments according to the Payment Schedule in the TILA Disclosures. If more than one person signs as a buyer, each agrees to keep all the promises in this contract even if the others do not. I have thoroughly inspected, accepted, and approved the motor vehicle in all respects.

### MOTOR VEHICLE IDENTIFICATION

| Stock No. | Year, Make, Model | Vehicle Identification Number | License Number (if applicable) | ☐ New ☐ Demonstrator ☐ Factory Official/Exec ☒ Used | Primary Use For Which Purchased ☒ Personal, Family, Household ☐ Business Or Commercial ☐ Agricultural |
|---|---|---|---|---|---|
| 11032 | 2011 HYUNDAI SONATA | 5NPEB4AC0BH180800 | | | |

Trade-in: Year N/A   Make N/A   Model N/A   VIN N/A   License No. N/A

Trade-in: Year N/A   Make N/A   Model N/A   VIN N/A   License No. N/A

### FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including down payment of $ 200.00 |
|---|---|---|---|---|
| 24.86 % | $ 6783.82 | $ 13537.91 | $ 20321.73 | $ 20521.73 |

**My Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 90 | 224.00 | BIWEEKLY DUE EVERY OTHER FRIDAY BEGINNING 06/05/2020 |
| 1 | 161.73 | FINAL PAYMENT DUE ON: 11/17/2023 |

**Security:** You will have a security interest in the motor vehicle being purchased.

**Late Charge:** ☒ If this box is checked, and I don't make a payment within 10 days of its due date, I will pay a late charge. The late charge will be the greater of $30 or 5% of the amount not paid on time.

**Prepayment:** If I pay all that I owe early, I will not have to pay a penalty.

**Additional Information:** See the contract documents for any additional information about nonpayment, default, security interests, any required repayment in full before the scheduled date, and prepayment refunds.

### DEFERRED DOWNPAYMENTS

| Due Date | Amount | Due Date | Amount |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

*In this box, the word "you" refers to the Buyer*
**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradors de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

HC# 4832-5074-2280v5 – 7/15
Utah

Page 1 of 6

Customer Initials 
AutoStar Solutions, Inc

| | Itemization of Amount Financed | | |
|---|---|---|---|
| 1. | Cash Price (including any accessories, services and $ __939.00__ sales tax) | | $ __12738.00__ (1) |

2. Downpayment

| | | |
|---|---|---|
| Gross trade-in | $ | 0.00 |
| - payoff by seller | $ | 0.00 |
| = net trade-in | $ | 0.00 |
| + Cash Downpayment | $ | 200.00 |
| + Deferred Downpayment | $ | 0.00 |
| + Manufacturer's Rebate | $ | 0.00 |
| + other __N/A__ | $ | 0.00 |

Total Downpayment (if negative, enter "0" and see Line 4.A. below)    $ __200.00__ (2)

3. Unpaid balance of cash price (1 minus 2)    $ __12538.00__ (3)

4. Other charges including amounts paid to others on my behalf (Seller may keep part of these amounts.):

| | | | |
|---|---|---|---|
| A. | Prior credit or lease balance paid to __N/A__ | $ | 0.00 |
| B. | Cost of physical damage insurance paid to insurance company | $ | 0.00 |
| C. | Cost of optional coverages with physical damage insurance paid to insurance company | $ | 0.00 |
| D. | Cost of optional credit insurance paid to insurance company or companies | $ | 0.00 |

Credit Life __N/A__    $ __N/A__

Disability __N/A__    $ __N/A__

| | | | |
|---|---|---|---|
| E. | Other insurance paid to the insurance company | $ | 0.00 |
| F. | VSI insurance paid to the insurance company | $ | 0.00 |
| G. | Official fees paid to government agencies | $ | 0.00 |
| H. | Other taxes | $ | 0.00 |
| I. | Government license and/or registration fees | $ | 72.25 |
| J. | Government certificate of title fee | $ | 6.00 |
| K. | Government vehicle inspection fees | $ | 43.00 |
| L. | Other charges (Seller must identify who is paid and describe purpose) | | |

| To | | For | | | |
|---|---|---|---|---|---|
| To | N/A | For | GAP Waiver Contract | $ | 0.00 |
| To | DEALER | For | DOCUMENT PROCESSING | $ | 805.00 |
| To | N/A | For | N/A | $ | 0.00 |
| To | DEALER | For | AGE BASED | $ | 50.00 |
| To | DEALER | For | COUNTY FEE | $ | 13.00 |
| To | DEALER | For | TEMP TAG | $ | 10.66 |
| To | N/A | For | N/A | $ | 0.00 |
| To | N/A | For | N/A | $ | 0.00 |

Total Other Charges and Amounts Paid To Others On My Behalf    $ __999.91__ (4)

5. **Amount Financed (3 + 4)**    $ __13537.91__ (5)

OPTION TO AVOID FINANCE CHARGES: If I pay the Amount Financed, Item 5, above, on or before __N/A__, I will not pay any finance charges.

Seller Signs: __N/A__

**Optional GAP Waiver (Debt Cancellation) Contract.** A GAP Waiver Contract is optional. My purchase of a GAP Waiver Contract is not required to obtain credit and will not be provided unless I sign below and agree to pay the extra charge. If I agree to buy a GAP Waiver Contract, the charge is shown in Line Item 4.K. of the Itemization of Amount Financed. My GAP Waiver Contract is a part of this Contract. I can see my GAP Waiver Contract for details on the protection it provides.

Term __N/A__

I/We want to purchase the optional GAP Waiver Contract:
Buyer Signs: __N/A__    Co-Buyer Signs: __N/A__

**Vendor's Single Interest Insurance (VSI):** ☐ If the box is checked, you require VSI insurance to protect you against loss of or damage to the vehicle, concealment, confiscation, conversion, embezzlement, and skip. VSI insurance is for your sole protection. This insurance does not protect my interest in the vehicle. I may choose the insurance company through which the VSI insurance is obtained. If I purchase VSI insurance through you, the cost of this insurance is $ __N/A__ and the term is __N/A__.

**PROPERTY INSURANCE:** I must keep the collateral insured against damage or loss in the amount I owe. I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have.

If any insurance is included below, policies or certificates from the insurance company will describe the terms, conditions and deductibles.

*A. Physical damage insurance.* If you obtain physical damage insurance, the coverages, terms and premiums for these terms are set forth below.

| Coverage | Term in Months | Premium |
|---|---|---|
| Collision | N/A | $ N/A |
| Comprehensive | N/A | $ N/A |
| Fire, Theft, and Combined Additional Coverage | N/A | $ N/A |
| Other  N/A | N/A | $ N/A |

*B. Optional coverages with physical damage insurance.* If I have chosen this insurance, the premiums for the initial  N/A  month term are itemized below.

☐ $ N/A    Towing/Labor Reimbursement    ☐ $ N/A    Rental Reimbursement    ☐ $ N/A    Other: N/A

*I agree to purchase the above checked coverages.*

Buyer's Signature:   N/A                                                                        Date:   05/21/2020

---

*Optional insurance coverages.* The insurance described below is not required to obtain credit. It will not be provided unless I sign and agree to pay the extra cost. My decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

| Coverage | Term in Months | | | | Premium | |
|---|---|---|---|---|---|---|
| GAP* | N/A | | | | $ 0.00 | |
| Involuntary Unemployment | N/A | | | | $ N/A | |
| Other  N/A | | | | | $ N/A | |
| Liability  $ N/A | Per Person  $ N/A | Per Accident  $ N/A | Property Damage  $ N/A | Premium  $ N/A | | |

*If the motor vehicle is determined to be a total loss, GAP Insurance will pay you the difference between the proceeds of my basic collision policy and the amount I owe on the motor vehicle, minus my deductible. I can cancel that insurance without charge for 10 days from the date of this contract.

*I want the optional coverages for which premiums are included above:*

Buyer's Signature:   N/A                                                                        Date:   05/21/2020

---

*Optional credit life and credit disability insurance.* Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless I sign and agree to pay the extra cost. My decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

| ☐ Credit Life, one buyer | $ N/A | ☐ Credit Life, both buyers | $ N/A | Term N/A |
|---|---|---|---|---|
| ☐ Credit Disability, one buyer | $ N/A | ☐ Credit Disability, both buyers | $ N/A | Term N/A |

Credit Life Insurance is for the scheduled term of this contract. Credit Disability Insurance covers the first  N/A  payments and does not cover the last scheduled payment. Credit life insurance pays only the amount I would owe if I paid all my payments on time. Credit disability insurance does not cover any increase in my payment or in the number of payments.

I want the insurance indicated above.

Buyer's Signature:   N/A                                                         Date   05/21/2020

Co-Buyer's Signature:   N/A                                                   Date   N/A

OTHER TERMS AND CONDITIONS

**HOW YOU FIGURE THE FINANCE CHARGE:** This is a simple interest contract. The annual contract interest rate is  24.95  %. This annual contract interest rate may not be the same as the Annual Percentage Rate shown in the TILA Disclosures. Finance charges will accrue on the unpaid amount financed on a daily basis at 1/365th of the annual rate (1/366th in a leap year). The unpaid amount financed does not include late charges or returned check charges.

You based the Finance Charge, Total of Payments, and Total Sale Price shown in the TILA Disclosures on the assumption that I will make every payment on the day it is due. My Finance Charge, Total of Payments, and Total Sale Price will be more if I pay late and less if I pay early. Changes may take the form of a larger or smaller final payment or, at your option, more or fewer payments of the same amount as my scheduled payment with a smaller final payment. If all my scheduled payments are equal, you will give me at least 25 days after the final scheduled payment is due to pay any extra amount I owe because I paid late.

**HOW YOU WILL APPLY MY PAYMENTS:** You will apply my payments in the following order:
1. earned but unpaid finance charge; and
2. to anything else I owe under this agreement.

**INTEREST AFTER MATURITY:** If I don't pay all I owe when the final payment becomes due, I will pay interest on the amount that is still unpaid. The interest rate will be the higher of 18% per year or the maximum rate allowed by law, if that rate is higher. The interest rate for this amount will begin the day after the final payment becomes due.

**LIABILITY INSURANCE:** UNLESS A CHARGE FOR LIABILITY INSURANCE IS INCLUDED IN THE ITEMIZATION OF AMOUNT FINANCED, LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

**PROPERTY INSURANCE:** I agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover your interest in the vehicle. The insurance must include collision coverage and either comprehensive or fire, theft, and combined additional coverage, with acceptable deductibles. I must maintain a Comprehensive deductible not more than $ 500.00  and a Collision deductible amount not more than $ 500.00   . I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have. I agree to give you proof of property insurance. I must name you as the person to be paid under the policy in the event of damage or loss.

**YOUR RIGHT TO BUY REQUIRED INSURANCE IF I FAIL TO KEEP THE MOTOR VEHICLE INSURED:** If I fail to give you proof that I have insurance, you may buy physical damage insurance. You may buy insurance that covers my interest and your interest in the motor vehicle, or you may buy insurance that covers your interest only. I will pay the premium for the insurance and a finance charge at the contract rate. If you obtain collateral protection insurance, you will mail notice to my last known address shown in your file.

**PHYSICAL DAMAGE INSURANCE PROCEEDS:** I must use physical damage insurance proceeds to repair the motor vehicle, unless you agree otherwise in writing. However, if the motor vehicle is a total loss, I must use the insurance proceeds to pay what I owe you. I agree that you can use any proceeds from insurance to repair the motor vehicle, or you may reduce what I owe under this contract. If you apply insurance proceeds to the amount I owe, they will be applied to my payments in the reverse order of when they are due. If my insurance on the motor vehicle or credit insurance doesn't pay all I owe, I must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to me.

**RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES:** If you get a refund on insurance or service contracts, or other contracts included in the cash price, you will subtract it from what I owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to me.

**APPLICATION OF CREDITS:** Any credit that reduces my debt will apply to my payments in the reverse order of when they are due, unless you decide to apply it to another part of my debt. The amount of the credit and all finance charge or interest on the credit will be applied to my payments in the reverse order of my payments.

**TRANSFER OF RIGHTS:** You may transfer this contract to another person. That person will then have all your rights, privileges, and remedies.

**SECURITY INTEREST:** To secure all I owe on this contract and all my promises in it, I give you a security interest in
- the motor vehicle including all accessories and parts now or later attached;
- all insurance proceeds and other proceeds received for the motor vehicle;
- any insurance policy, service contract or other contract financed by you and any proceeds of those contracts; and
- any refunds of charges included in this contract for insurance, or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show your security interest in the motor vehicle.

**USE AND TRANSFER OF THE MOTOR VEHICLE:** I will not sell or transfer the motor vehicle without your written permission. If I do sell or transfer the motor vehicle, this will not release me from my obligations under this contract. I will promptly tell you in writing if I change my address or the address where I keep the motor vehicle. I will not remove the motor vehicle from the state of my residence for more than 30 days unless I first get your written permission.

**CARE OF THE MOTOR VEHICLE:** I agree to keep the motor vehicle free from all liens, and claims except those that secure this contract. I will timely pay all taxes, fines, or charges pertaining to the motor vehicle. I will keep the motor vehicle in good repair. I will not allow the motor vehicle to be seized or placed in jeopardy or use it illegally. I must pay all I owe even if the motor vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the motor vehicle, you may pay the third party any cost required to free the motor vehicle from all liens or claims. You may immediately demand that I pay you the amount paid to the third party for the motor vehicle. If I do not pay this amount, you may repossess the motor vehicle and add that amount to the amount I owe. If you do not repossess the motor vehicle, you may still demand that I pay you, but you cannot compute a finance charge on this amount.

**DEFAULT:** I will be in default if:
- I do not pay any amount when it is due;
- I break any of my promises in this agreement;
- I allow a judgment to be entered against me or the collateral; or
- I file bankruptcy, bankruptcy is filed against me, or the motor vehicle becomes involved in a bankruptcy.

If I default, you can exercise your rights under this contract and your other rights under the law.

**LATE CHARGE AND RETURNED CHECK CHARGE:** I will pay you a late charge on each late payment as shown in the TILA Disclosures. If any payment I give you is unpaid for any reason, I agree to pay a returned check charge of $20, as permitted by law.

HC# 4832-5074-2280v5 – 7/15    Page 4 of 6    Customer Initials
Utah    AutoStar Solutions, Inc

**NEGATIVE CREDIT REPORT:** As required by Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**REPOSSESSION:** If I default, you may repossess the motor vehicle from me if you do so peacefully. If any personal items are in the motor vehicle, you can store them for me and give me written notice at my last address shown on your records within 15 days of discovering that you have my personal items. If I do not ask for these items back within 31 days from the day you mail or deliver the notice to me, you may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the motor vehicle.

**MY RIGHT TO REDEEM:** If you take my motor vehicle, you will tell me how much I have to pay to get it back. If I do not pay you to get the motor vehicle back, you can sell it or take other action allowed by law. My right to redeem ends when the motor vehicle is sold or you have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

**DISPOSITION OF THE MOTOR VEHICLE:** If I don't pay you to get the motor vehicle back, you can sell it or take other action allowed by law. You will send me notice at least 10 days before you sell it. You can use the money you get from selling it to pay allowed expenses and to reduce the amount I owe. Allowed expenses are expenses you pay as a direct result of taking the motor vehicle, holding it, preparing it for sale, and selling it. If any money is left, you will pay it to me unless you must pay it to someone else. If the money from the sale is not enough to pay all I owe, I must pay the rest of what I owe you plus interest. If you take or sell the motor vehicle, I will give you the certificate of title and any other document required by state law to record transfer of title.

**COLLECTION COSTS:** I will pay any reasonable collection costs you incur, including reasonable attorney fees and court costs, as the law allows. If you hire an attorney or a third party collection agency to collect what I owe, I will also pay the lesser of: (1) the actual amount you are required to pay to the third party collection agency and/or the attorney, regardless of whether that amount is a specific dollar amount or a percentage of the amount owed to us; or (2) 40% of the amount I owe.

**CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS:** This contract may contain charges for insurance or service contracts or for services included in the cash price. If I default, I agree that you can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what I owe or repair the motor vehicle.

**YOUR RIGHT TO DEMAND PAYMENT IN FULL:** If I default, or you believe in good faith that I am not going to keep any of my promises, you can demand that I immediately pay all that I owe. Unless required by applicable law, you don't have to give me notice that you are demanding or intend to demand immediate payment of all that I owe.

**INTEGRATION AND SEVERABILITY CLAUSE:** This contract and the related documents that I sign contemporaneously with this contract contain the entire agreement between you and me relating to the sale and financing of the motor vehicle. If any part of this contract is not valid, all other parts stay valid.

**LEGAL LIMITATIONS ON YOUR RIGHTS:** If you don't enforce your rights every time, you can still enforce them later. You will exercise all of your rights in a lawful way. I don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all your other acts.

**CO-SIGNER OBLIGATIONS:** Any co-signer who signs this contract agrees to pay any amounts due under the contract if the buyer(s) does not pay such amounts. You do not have to exhaust your legal remedies against any buyer before seeking payment from the co-signer.

**APPLICABLE LAW:** Federal and Utah law apply to this contract.

**COLLECTION CALLS:** By providing you my wireless (cell) telephone number, I expressly consent to receiving telephone calls from you concerning my contract, including calls to collect what I owe. Live calls may be made by one of your employees. Calls may also be made by a prerecorded, autodialed voice or text message as applicable law allows. My consent covers *all* types of calls. You do not charge me for such calls. My wireless carrier will charge me for your incoming calls and text messages according to my plan.

**STARTER INTERRUPT/GPS TRACKING:** [X] If the box is checked, my motor vehicle is equipped with a starter interrupt GPS tracking device ("Device"). By signing this contract, I agree that you may install the "Device" in my motor vehicle. I understand and agree that you may use this Device to locate my motor vehicle in the event that I do not make my payments on the dates they are due as shown in the TILA Disclosures. I understand and agree that you will disable the motor vehicle in the event that I do not make my payments on the dates they are due as shown in the TILA Disclosures, subject to any rights that I may have to cure my default. I agree that I will not tamper with, disable or attempt to disable the Device. The Device is and remains your property. I agree to return the motor vehicle to you after I have made all payments due under this contract so that you can remove the Device at no cost to me. Additional terms and disclosures regarding the installation and use of the Device are provided to me separately.

[X] If the box is checked, my motor vehicle is equipped with a GPS tracking device ("GPS Device"). By signing this contract, I agree that you may install the GPS Device in my motor vehicle. I understand and agree that you may use this GPS Device to locate my motor vehicle in the event that I do not make my payments on the dates they are due as shown in the TILA Disclosures. I agree that I will not tamper with, disable or attempt to disable the GPS Device. The GPS Device is and remains your property. I agree to return the motor vehicle to you after I have made all payments due under this contract so that you can remove the GPS Device at no cost to me. Additional terms and disclosures regarding the installation and use of the GPS Device are provided to me separately.

**SELLER'S DISCLAIMER OF WARRANTIES: Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the motor vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. This provision does not affect any warranties covering the motor vehicle that the motor vehicle manufacturer may provide.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER (This provision applies to this contract only if the motor vehicle financed in the contract was purchased primarily for personal, family, or household use.)**

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

Any change to this contract must be in writing. Both you and I must sign it. No oral changes to this contract are enforceable.

X _____   X _____
Buyer Signs   Co-Buyer Signs

**CONSUMER WARNING** – Notice to the buyer – I will not sign this contract before I read it or if it contains any blank spaces. I am entitled to a copy of the contract I sign. Under the law, I have the right to pay off in advance all that I owe and under certain conditions may save a portion of the finance charge. I will keep this contract to protect my legal rights.

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT:** I AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. I CONFIRM THAT BEFORE I SIGNED THIS CONTRACT, YOU GAVE IT TO ME, AND I WAS FREE TO TAKE IT AND REVIEW IT.

X _____ 05/21/2020      X _____ 05/21/2020
Buyer Signs                Date             Co-Buyer Signs              Date

X N/A                      N/A              X N/A                       N/A
Co-Buyer Signs             Date             Co-Signer Signs             Date

LUCKY'S AUTO CREDIT        05/21/2020       X _____
Seller Signs               Date             By:

THIS CONTRACT IS NOT VALID UNTIL YOU AND I SIGN IT.

☐ If checked, I acknowledge that you and I have signed a separate arbitration agreement. That agreement is hereby attached and the terms are incorporated into the terms of this contract.

Negotiation and Assignment: For value received the undersigned Seller does hereby sell, assign and transfer to _____ subject to the terms and conditions of the separate agreement between the Parties.

Assignment is made:   ☐ With Recourse    ☐ Without Recourse    ☐ With Limited Recourse

Seller _____   By _____   Title _____   Date _____